28 N.J. Super. 605 (1953)
101 A.2d 372
COLLINGSWOOD HOSIERY MILLS, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
AMERICAN FEDERATION OF HOSIERY WORKERS, AN UNINCORPORATED MEMBERSHIP ASSOCIATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 4, 1953.
*607 Mr. S. Herman Cohen for the plaintiff.
Mr. Samuel L. Rothbard and Mr. Abraham L. Friedman for the defendant (Messrs. Rothbard, Harris & Oxfeld, attorneys).
*608 FREUND, J.S.C.
In this proceeding the plaintiff moves to vacate, and the defendant to confirm, an award made by an arbitrator under a collective bargaining agreement between the plaintiff as employer and the defendant union on behalf of the employees. There was no dispute of fact. The sole issue was construction of the agreement  whether plaintiff's employees are entitled to vacation pay as though they had been in the employ of the plaintiff for five years or more.
On or about August 1, 1950 the plaintiff purchased a hosiery mill, formerly owned by Haddon Hosiery Mills Corporation, and shortly thereafter entered into an agreement with Hosiery Workers Association of South Jersey, an independent union. The agreement expressly provided that for the purpose of vacation benefits, employees were to be given credit for the time they had been employed by the previous operator of the plant. Thus, two weeks' vacation would be given to employees who "have five years or more combined and continuous service credit with the Employer and Haddon Hosiery Mills Corp."
On September 30, 1952 the plaintiff entered into a contract with another union, the defendant, for a term of two years, automatically renewable for successive two year terms unless terminated upon 60 days' notice. This contract, however, omitted any provision for credit for employment by the previous operator of the plant. The pertinent section reads as follows:
"Each employee who is on the payroll of the Employer on June first of the year in which the vacation falls and who on that date has been on the payroll of the Employer continuously for a period of five years or more shall be eligible for two weeks' vacation with pay. * * *"
Certain employees claimed two weeks' vacation on the ground that they had been employed at the plant for more than five years. The plaintiff, however, refused to pay because the company had not been in existence and no employee had been on its payroll for five years, and the agreement did not provide for credit for previous employment at the plant.
*609 The agreement provided for arbitration of disputes before a designated impartial chairman, and the matter was submitted to him. His jurisdiction is thus defined:
"Any and all matters of dispute, difference, disagreement or controversy of any kind or character, between the union and the employer, involving or relating to wages, rates, hours, conditions of work, and the relations between the parties, arising during the term of this agreement or any renewal thereof, including but not limited to the interpretation, construction or application of the terms of this agreement, shall be submitted to the impartial chairman for final and binding decision by him. It is understood and agreed, however, that the Impartial Chairman shall not have power to alter, modify or change this agreement or any of the terms or provisions thereof, and the Union and Employer agree to be bound by and abide by the decisions of the Impartial Chairman."
After hearings, the chairman made an award in favor of the employees. In a formal opinion he stated the issues and the arguments of the parties, and concluded: "I think we must read the contract provision as a whole in accordance with the well established legal rule of contract interpretation to determine what was the actual intent of the parties," that the pertinent section "read as a whole, indicates an intention to give two weeks of vacation or vacation pay during the term of this contract * * * that the employees and the employer intended that employees who had been employed in this plant for a total period of five years, including service with preceding operators of the plant, would get a second week of vacation."
On this motion the issues as I perceive them are: was the award justified under the contract, what is the effect of submission to arbitration and is the award sustainable?
That parties to a contract may agree that all controversies growing out of it shall be submitted to arbitration and that the law favors such procedure is well settled.
"A submission to arbitration is essentially a contract. * * * The authority of the arbitrators is derived from the mutual assent of the parties to the terms of submission; the parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, supplemented by the pertinent *610 provisions of the Arbitration act, and no further. They have a right to stand upon the precise terms of their contract." (Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1 (E. & A. 1934).
The question is one of intention, to be ascertained by the same tests that are applied to contracts generally, and whether the parties intended to submit an issue to arbitration calls for determination by the court as to the scope of the collective bargaining agreement. Machine Printers Beneficial Ass'n. of U.S. v. Merrill, etc., Works, Inc., 12 N.J. Super. 26 (App. Div. 1951).
In the instant case the jurisdiction granted the arbitrator by the parties included "the interpretation, construction or application of the terms of this agreement," but his sweeping authority was qualified by prohibiting him from altering, modifying or changing the agreement or any of the terms or provisions thereof.
The preliminary question, therefore, is whether the dispute between the parties was arbitrable under the collective bargaining agreement. Not every controversy between an employer and employees is arbitrable, but only those which fall within the scope of the agreement fairly construed. Here, the entire issue devolved upon the construction of the contract, not upon any factual question, for there was none. Although purportedly the issue raised by the union involved construction of the contract, actually the defendant's grievance does not arise out of the contract as drawn. There is no ambiguity or uncertainty in the contract that only employees who had been on the payroll of the employer for five years or more are to be entitled to two weeks' vacation. No employee was, or could possibly in the summer of 1953 have been, within this category because the plaintiff employer had been in business only three years. The defendant's claim is grounded upon the provision contained in the former agreement, but omitted from the existing contract, namely, that credit be given for previous employment in the plant. The claim of the defendant, therefore, does not arise out of the contract, nor is it within *611 the interpretation, construction or application of the terms thereof. If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot in that regard be said to provide for arbitration. Under the instant contract, the controversy did not concern an arbitrable issue. If a dispute is not one which under the agreement properly construed is arbitrable, the court may not direct arbitration. A party may not be compelled to submit to arbitration questions which, on the face of the contract, are clearly beyond the scope of the arbitration agreement, or as to matters clearly intended to be omitted therefrom. Hence, under the circumstances of this case, the plaintiff might well have declined to submit to arbitration and the court would not have directed it. Machine Printers Beneficial Ass'n. of U.S. v. Merrill, etc., Works, Inc., supra; Newark Milk & Cream Co. v. Local 680, etc., 12 N.J. Super. 36 (App. Div. 1951); International Ass'n of Machinists v. Cutler-Hammer, Inc., 271 App. Div. 917, 67 N.Y.S.2d 317 (App. Div. 1947), affirmed 297 N.Y. 519, 74 N.E.2d 464 (Ct. App. 1947).
But the plaintiff voluntarily submitted to arbitration and participated in the hearings, and the agreement provided that the parties were to be bound and abide by the decision of the impartial chairman. Arbitration proceedings are favored by the courts. Every intendment is indulged in favor of the award and generally the award would be sustained even though the arbitrator erred as to law or fact.
However, this general rule is subject to the qualification that
"in regard to mistakes in law courts will not interfere, unless it appears that the arbitrators meant to decide according to the legal rule, and had mistaken it; and it must so appear on the face of the award or by the statement of the arbitrators. If arbitrators mean to decide according to law, but mistake the rule in some palpable and material point, in such case the award will be set aside, as not conformable to their real judgment and intention. But, unless they intend to be bound by the legal rule, courts will not withdraw the matter from the tribunal which the parties themselves have selected. The courts will not undertake to inquire whether the conclusion was right or not, unless they can see that *612 professing to decide according to law, the arbitrators have decided contrary to law." Bell v. Price, 22 N.J.L. 578 (E. & A. 1849).
Ruckman v. Ransom, 23 N.J. Eq. 118 (Ch. 1872). Indeed, Vice-Chancellor Van Fleet, in Leslie v. Leslie, 50 N.J. Eq. 103 (Ch. 1892), pointed out that an arbitrator may do what no other judge has a right to do; he may intentionally decide contrary to law and still have his judgment stand, unless the fact that he intended to decide according to law and his mistake of law appear on the face of the award. Vide, Eastern Engineering Co. v. City of Ocean City, 11 N.J. Misc. 508 (Sup. Ct. 1933); Held v. Comfort Bus Line, Inc., 136 N.J.L. 640 (Sup. Ct. 1948); Carhal Factors, Inc. v. Salkind, 5 N.J. 485 (1950); Anco Products Corp. v. T V Products Corp., 23 N.J. Super. 116 (App. Div. 1952).
In Hoboken Manufacturers' R.R. Co. v. Hoboken R.R., &c., Co., 132 N.J. Eq. 111 (Ch. 1942), affirmed 133 N.J. Eq. 270 (E. & A. 1943), the rule and its history were expounded. The court declared:
"Arbitrators generally are not bound to questions of law. * * * The intention of arbitrators to decide questions of law must be apparent and not be inferred. * * * An arbitrator is not bound to state the grounds of his decision and if he is silent as to the law it cannot be inferred that he is wrong. Watson Arb. & Award, § 165. If, on the other hand, arbitrators state the rules of law upon which their conclusions are based, such statement is sufficient proof that they intended to decide the matters according to law, in which case courts of equity may set the same aside if a mistake in the law appears. 5 C.J., Arbitration & Award, § 472."
Here, the arbitrator was, as already stated, confronted solely with a legal issue, viz., the construction of the contract. His award, in the form of an opinion, annexed to the complaint, shows on its face that he intended to construe the contract in accordance "with the well established legal rule of contract interpretation," and he concluded that it was his "opinion" that the "language of Section 2 of Article IX, read as a whole, indicates an intention to give two weeks of vacation or vacation pay during the term of *613 this contract." The arbitrator was mistaken as to the law and his mistake is apparent on the face of the award. It is settled beyond peradventure of doubt that the law will not make a better contract for the parties than they themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of another, nor supply a term with respect to which it is silent; the judicial function is to enforce a contract as it is written. Kupfersmith v. Delaware Ins. Co., 84 N.J.L. 271 (E. & A. 1912). The cardinal rule in the interpretation of contracts is to ascertain and effectuate the common intention of the parties and where parties have reduced their contract to writing, the intention that controls is that expressed or apparent in the writing. Corn Exchange National Bank & Trust Co., Philadelphia, v. Taubel, 113 N.J.L. 605 (E. & A. 1934).
The arbitrator in the instant case, both under the applicable rule of law and under the expressed terms of the contract, had no right to "alter, modify or change" the terms of the written agreement. The omission of the provision for credit for previous employment in the plant, which had been included in the first contract, is significant. The provision was either intentionally eliminated or omitted as the result of mistake. If intentional, there could be no basis for the award. If it was the result of mistake, the proper course for the defendant to have pursued would have been to apply for reformation of the contract in the appropriate forum.
The case of American Federation of Hosiery Workers v. Pohatcong Hosiery Mills, Inc., 13 N.J. Super. 268 (App. Div. 1951), relied upon by the defendant, is clearly distinguishable from the instant case. There, the issue was whether striking employees were entitled to vacation pay and the court concluded that the dispute and the interpretation of the pertinent provision of the contract was within the scope of the arbitration clause.
The award of the arbitrator is set aside.