909 A.2d 1186 (2006)
388 N.J. Super. 640
Howard WEIN, Patrick Delaney, and Jeffery Realty, Inc., Plaintiffs-Respondents,
v.
Jack MORRIS, Charlestown Crossing, Inc., JSM at Talmadge, LLC, JSM at Inman, LLC, JSM at New Dover, LLC, and JSM at Matawan, LLC., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 2006.
Decided November 21, 2006.
*1189 Jeffrey J. Brookner argued the cause for appellants (Wilentz, Goldman & Spitzer, attorneys; Alan Wasserman, Woodbridge, of counsel; Mr. Wasserman and Mr. Brookner, on the brief).
Brian F. Curley, Morristown, argued the cause for respondents.
Before Judges WEFING, PARKER and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
Nearly five years after this action was commenced, the trial judge sua sponte ordered the parties to abide by their contractual promise to arbitrate their disputes, thus compelling a sixteen-day arbitration proceeding. In this appeal, we consider: whether the trial judge erred in compelling arbitration; whether defendants waived their right to now complain of that order by neither appealing nor seeking leave to appeal then, or by thereafter engaging in arbitration; and whether the arbitrator exceeded his authority by modifying his award on other than clerical, typographical or computational grounds.

I
In January 1996, plaintiffs Howard Wein, Patrick Delaney, and Jeffery Realty, Inc. (plaintiffs) approached defendant Jack Morris (Morris), touting their ability to find commercial tenants for properties owned by entities Morris controlled. *1190 Plaintiffs indicated they had relationships with national drugstore chains that might be interested in Morris's properties. Morris agreed that plaintiffs could pursue the marketing of properties on Stelton Road in Piscataway, on Inman Avenue in Edison and on Talmadge Road in Edison, and that a five per cent commission would be paid if plaintiffs were the procuring cause in bringing a national drugstore to any of the three properties.
Plaintiffs alleged that they engaged Rite Aid's interest in the Inman Avenue property and Walgreens' interest in the Stelton Road property. In March 1997, plaintiffs and Morris executed a lease commission agreement regarding the Inman Avenue property owned by defendant JSM Inman, LLC, and the Stelton Road property owned by defendant Charlestown Crossing, Inc. These agreements identified Jeffery Realty as the procuring broker and included the following arbitration provision:
Any controversy, dispute or claim between the parties relating to this agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association in the county in which the property is located.
Frustrated by the slow progress of negotiations, Morris approached Rite Aid and, without plaintiffs' involvement, Rite Aid leased the Stelton Road property from Charlestown Crossing in September 1997. Within the month that followed, Morris terminated the lease commission agreements, pursued Walgreens, and, in April 1997, leased the Talmadge Road property to Walgreens.

II
On November 5, 1998, plaintiffs filed this action against Morris and the other defendants alleging, among other things, that they breached the lease commission agreements and interfered with plaintiffs' relationships with the drug chains.
The exchange of discovery between the parties was closely monitored by the trial court. For example, on September 19, 2001, the trial judge entered an order that resolved a hotly contested discovery dispute as to which Morris unsuccessfully sought leave to appeal. The record on appeal also includes four case management orders that adjusted the discovery end date, the last directing that discovery be completed by January 30, 2002.
On May 2, 2002, long after the discovery period expired, Morris moved to compel arbitration. This motion, however, was withdrawn. Soon after withdrawing that motion, Morris moved for summary judgment; that motion was also withdrawn so that the parties could pursue yet additional discovery. Approximately one year later, Morris moved and plaintiffs cross-moved for summary judgment. Apparently due to the parties' voluminous submissions the statements of undisputed material facts consisted of more than 300 pages of text, and the related exhibits, according to plaintiffs, filled two bankers' boxesthe cross-motions were adjourned on a few occasions, and trial dates of May 27, 2003 and July 14, 2003 were also adjourned.
To the surprise of the parties, on August 22, 2003, the adjourned return date of the parties' cross-motions for summary judgment, the trial judge sua sponte concluded that the disputes were arbitrable. On August 28, 2003, he entered an order that denied the summary judgment motions as moot, compelled the arbitration of the disputes, and dismissed the complaint and all counterclaims and cross-claims.
Despite their mutual assertion that the right to compel arbitration had been *1191 waived,[1] no party then sought appellate review of the August 28, 2003 order but, instead, completed the steps necessary to obtain arbitration of their disputes. They selected a retired jurist to act as their arbitrator and presented sixteen days of testimony and argument. On December 8, 2004, the arbitrator rendered a decision that awarded plaintiff $1,076,769.11 plus prejudgment interest. This award did not allow for counsel fees and did not allow for additional damages based upon the possibility of future lease renewals. Instead, the arbitrator stated in his written decision that his award was "in full settlement of all claims and counterclaims" and that "[a]ll claims not expressly granted herein are hereby[] denied."
On December 9, 2004, plaintiffs asked the arbitrator to amend his award because it contained miscalculations and because it failed to include relief for commissions that might be generated by future lease renewals. Morris acknowledged that the arbitrator was empowered to correct miscalculations,[2] but objected to the issuance of relief based upon future lease renewals, arguing that this claim had already been denied and that the arbitrator did not have the authority to revisit his original award in that material respect.
On January 21, 2005, the arbitrator amended his award by recalculating the damages previously awarded, increasing the total award from $1,076,769.11 to $1,089,804.38. The arbitrator also granted future commissions in the event of lease renewals, which Morris asserts has the potential to result in additional relief to plaintiffs in the approximate amount of $3,300,000.
On December 30, 2004, a few weeks before the arbitrator's disposition of the post-award applications, plaintiffs moved in the trial court for confirmation of the amended award and Morris cross-moved to vacate it. After hearing oral argument, the trial judge granted plaintiffs' motion and denied Morris's cross-motion, entering an order on June 10, 2005 that confirmed the amended award and reduced that award to judgment.
Morris has appealed, seeking our review of both the August 28, 2003 order, which compelled arbitration, and the June 10, 2005 order, which confirmed the amended award.

III
After carefully examining the record in light of the parties' arguments, we conclude that the parties waived their contractual right to arbitrate by actively litigating the matter in the trial court for a prolonged period and, as a result, the trial judge's unilateral determination to compel arbitration was mistaken. We also reject plaintiffs' contentions that Morris waived his right to seek appellate review of that order by failing to appeal or to seek leave to appeal immediately after entry of the August 28, 2003 order, or by vigorously pursuing his rights in the arbitration proceedings.

A
Although our courts are empowered to compel parties to arbitrate disputes *1192 in accordance with their private agreements, the active and prolonged litigation of such disputes in the trial court will require a finding of the waiver of the right to compel arbitration.
In McKeeby v. Arthur, 7 N.J. 174, 181, 81 A.2d 1 (1951), the Court described the relationship between the Superior Court's jurisdiction to resolve disputes and the impact of an applicable arbitration agreement in the following fashion:
The action is for damages on breach of contract, a subject matter fully within the jurisdiction of the Superior Court. In jurisdictions like our own, where consent arbitration is authorized and approved by statute, the courts will, on proper occasion, hold the parties to their undertaking, not because the subject matter of the controversy is outside of jurisdiction, but in recognition and enforcement of the agreement of the parties. And where the parties expressly or by implication waive or revoke the agreement to arbitrate, or are in default in proceeding with the arbitration, the right to a suit at law revives, not because of any change in the court's jurisdiction, but because the parties, by action or inaction, have departed from their agreement; or, to put it another way, such bar to the exercise of jurisdiction as arises out of the agreement to arbitrate may be lifted by the consent or waiver of the parties.
Our approach to the relationship between pending suits and arbitration agreements has not changed since McKeeby. See, e.g., Duerlein v. N.J. Auto. Full Ins. Assoc., 261 N.J.Super. 634, 640, 619 A.2d 664 (App.Div.1993); Farese v. McGarry, 237 N.J.Super. 385, 394, 568 A.2d 89 (App.Div. 1989); Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., 131 N.J.Super. 159, 167, 329 A.2d 70 (App.Div.1974); Pyramid Elec. Co. v. Staklinski, 61 N.J.Super. 278, 282, 160 A.2d 505 (App.Div.), certif. denied, 33 N.J. 117, 162 A.2d 342 (1960).
In short, a waiver resulting from the parties' voluntary pursuit of their positions in the Superior Court will preclude the enforcement of a contractual promise to arbitrate. What may often prove difficult, however, is ascertaining when a waiver has occurred. For example, in Hudik-Ross, we held that "the mere institution of legal proceedings . . . without ostensible prejudice to the other party" did not constitute "a waiver of a right to proceed with arbitration in accordance with the terms of an arbitration agreement," when arbitration was not demanded "until four months after the institution of plaintiff's lawsuit" and the promise to arbitrate was pleaded in an affirmative defense. 131 N.J.Super. at 167, 329 A.2d 70. On the other hand, in Farese, we found a waiver when the agreement to arbitrate was not mentioned until the filing of a responsive pleading nine months after the institution of suit, which was two weeks before the commencement of trial. 237 N.J.Super. at 394, 568 A.2d 89.
We need not determine where, in finding a waiver, the line should be drawn between what occurred in Hudik-Ross and what occurred in Farese because the circumstances at hand abundantly militate in favor of the finding of a mutual waiver of the contractual right to arbitrate. As we have mentioned, suit was pending for three and one-half years when Morris filed his motion to compel arbitration, a far greater delay than those encountered in both Hudik-Ross and Farese. Considering the duration of the discovery proceedings and the trial court's extensive involvement in managing this suit, we are required to conclude that by the time the judge sua sponte compelled arbitrationmore than one year after the withdrawal of the motion to compel arbitration and nearly five *1193 years after the filing of the complaintthe parties had waived their contractual right to arbitration. Since it would be difficult to find a stronger case for waiver than the circumstances presented here, we conclude that the judge mistakenly compelled the parties to arbitrate their disputes.

B
Regardless of its invalidity, plaintiffs contend that our review of the August 28, 2003 order is barred, arguing that: (1) it is a final order and that Morris's failure to file a notice of appeal within forty-five days of its entry bars our consideration of the order's merit; (2) even if interlocutory, Morris was required to seek leave to appeal the order and, by failing to do so, waived his right to seek review following confirmation of the arbitration award; and (3) Morris's active participation in the arbitration proceedings constituted a waiver of his later attack on the August 28, 2003 order. We disagree in all respects.

(1)
True, at first blush, the August 28, 2003 order appears to be a final order. It states that the trial judge dismissed the complaint, the counterclaim and all cross-claims, thereby ostensibly suggesting that all issues as to all parties had been adjudicated. However, the order also contains the judge's direction that the disputes be arbitrated and, undoubtedly, the judge and the parties anticipated further proceedings in the trial court upon the completion of arbitration such as the filing of motions seeking confirmation or vacation of the arbitrator's award. Accordingly, although the order may appear to be a final order, it did not finally dispose of all issues as to all parties because additional proceedings loomed in the future.[3] In light of the incomplete resolution of the parties' disputes by way of the August 28, 2003 order, we conclude that it was not appealable as of right. See, e.g., Caggiano v. Fontoura, 354 N.J.Super. 111, 123, 804 A.2d 1193 (App.Div.2002); Pressler, Current N.J. Court Rules, comment on R. 2:2-3 (2006).
We also conclude there is nothing peculiar about an order compelling arbitration that ought to permit its immediate review by an appeal as of right. In considering this point, we recognize that the courts of some sister states have found such orders to be immediately appealable. See Ex Parte Cox, 828 So.2d 295, 298 (Ala.2002); Daginella v. Foremost Ins. Co., 197 Conn. 26, 495 A.2d 709, 712 n. 6 (1985); Curtis v. Olson, 837 So.2d 1155, 1156 (Fla.App.2003); Salsitz v. Kreiss, 198 Ill.2d 1, 260 Ill.Dec. 541, 761 N.E.2d 724, 730 (2001), cert. denied, 535 U.S. 1055, 122 S.Ct. 1912, 152 L.Ed.2d 822 (2002); Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe of the Mississippi in Iowa, 656 N.W.2d 167, 170 (Iowa 2003); Holloman v. Circuit City Stores, Inc., 391 Md. 580, 894 A.2d 547, 551 (2006); Horanburg v. Felter, 136 N.M. 435, 99 P.3d 685, 687 (App.2004); Scherer v. Schuler Custom Homes Constr., Inc., 98 P.3d 159, 162 (Wyo.2004). We choose, however, not to follow this course because these decisions either turn on a different view of finality, or because, in some of these jurisdictions, the immediate appeal of such an order was authorized by a particular rule or statute unique to that state.[4] Instead, in adhering *1194 to the concept of finality contained in R. 2:2-3, we conclude that the August 28, 2003 order was not final because it did not resolve all issues as to all parties, but instead anticipated future proceedings in this civil action. Accordingly, we align our decision with those of other state courts that do not view an order compelling arbitration as final because those courts share the view of our courts as to what constitutes a final order. See Graham v. Scissor-Tail, Inc., 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165, 167 n. 1 (1981); Ferla v. Infinity Dev. Assocs., LLC, 107 P.3d 1006, 1008 (Colo.App.2004); Saneii v. Robards, 289 F.Supp.2d 855, 861 (W.D.Ky.2003) (applying Kentucky law); Banks v. City Finance Co., 825 So.2d 642, 648 (Miss.2002); Deiab v. Shaw, 138 S.W.3d 741, 742 (Mo. App.2003); Assoc. of Unit Owners of Bridgeview Condominiums v. Dunning, 187 Or.App. 595, 69 P.3d 788, 801 (2003) Schantz v. Dodgeland, 830 A.2d 1265, 1266 (Pa.Super.2003); Brooks v. Pep Boys Auto. Supercenters, 104 S.W.3d 656, 660-61 (Tex. App.2003).
We also reject the argument that the language of the August 28, 2003 order that directs the dismissal of all claims should be read and applied literally. The trial judge was not empowered to dismiss the pending claims. Instead, the governing statute limited the authority of our courts to do anything other than stay the disposition of a lawsuit when enforcing an arbitration agreement:
In an action brought in any court upon an issue arising out of an agreement providing for the arbitration thereof, the court, upon being satisfied that the issue involved is referable to arbitration, shall stay the action, if the applicant for the stay is not in default in proceeding with the arbitration, until an arbitration has been had in accordance with the terms of the agreement.
[N.J.S.A. 2A:24-4 (emphasis added).[5]]
A stay of an action pending arbitration does not constitute a final, appealable order because it inherently anticipates further proceedings prior to the ultimate entry of a final judgment.
Had either party attempted to then file a notice of appeal and sought our review of the August 28, 2003 order as a matter of right, we undoubtedly would have found the order to be interlocutory. In examining the appealability of an order, we look to its substance and not an inaccurate choice of wording which ostensibly, but incorrectly, suggests its finality. Cf., M.J. Paquet, Inc. v. Dep't of Transp., 335 N.J.Super. 130, 135 n. 1, 761 A.2d 122 (App.Div.2000), aff'd in part, rev'd in part on other grounds, 171 N.J. 378, 794 A.2d 141 (2002); Matter of Berkeley, 311 N.J.Super. 99, 101, 709 A.2d 303 (App.Div. 1998). Just as a trial court cannot imbue a party with the right to appeal through a mistaken exercise of the authority granted by R. 4:42-2, see, e.g., Hallowell v. Am. Honda Motor Co., 297 N.J.Super. 314, 317-18, 688 A.2d 110 (App.Div.1997), so too a trial court cannot render appealable as of right an order compelling arbitration by dismissing all pending claims in violation of N.J.S.A. 2A:24-4.[6]

*1195 (2)
Plaintiffs' attempt to avoid appellate review of the August 28, 2003 order on procedural grounds does not end there. Plaintiffs contend that even if the August 28, 2003 order is not a final order, Morris should have sought leave to appeal and, by failing to do so, should be estopped from challenging the August 28, 2003 order. We reject this argument.
Without an unfettered right to appeal, Morriswhen faced with the trial judge's erroneous order compelling arbitrationwas left only with the right to seek our leave to appeal. Our power to grant such relief is "highly discretionary" and "exercised only sparingly," State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76 (1985), because "piecemeal reviews ordinarily are anathema to our practice," CPC Intern., Inc. v. Hartford Acc. & Indem. Co., 316 N.J.Super. 351, 365, 720 A.2d 408 (App.Div.1998), certif. denied, 158 N.J. 74, 726 A.2d 937 (1999), and because "interlocutory appellate review runs counter to a judicial policy that favors an uninterrupted proceeding at the trial level with a single and complete review," S.N. Golden Estates v. Continental Cas. Co., 317 N.J.Super. 82, 88, 721 A.2d 307 (App.Div.1998). In determining whether to grant leave to appeal, we weigh these policies and weigh also a consideration of the merits, the importance of the issues raised, and the relative impact caused by our intervention or discretionary refusal to intervene at an interlocutory stage.
Here, it may be true that Morris could have presented a compelling case for the grant of interlocutory review of the August 28, 2003 order; the order was disconnected from binding precedent and the failure to permit appellate review at that stage had the predictable and undesirable effect of relegating the parties to a lengthy and potentially meaningless arbitration proceeding. However, considering that our grant of appellate review at that stage was discretionary and that interlocutory review is granted only sparingly, Morris's decision not to seek such relief should not result in prejudice and should not be the cause for the loss of his valuable right to the adjudication of the disputes in the Superior Court. Accordingly, we decline to hold that Morris's failure to seek interlocutory review should bar him from obtaining review of the order now that a final judgment has been entered even if, in hindsight, we believe that the motion for leave to appeal would likely have been granted and would have been the means for avoiding the lengthyand now moot arbitration proceedings that followed.[7]

*1196 (3)
And, lastly, we reject plaintiffs' contention that Morris's vigorous involvement in the arbitration proceedings constitutes a waiver or abandonment of a future challenge to the order compelling arbitration. What occurred here is quite different from the circumstances in Collingswood Hosiery Mills v. Am. Fed. Hosiery Workers, 28 N.J.Super. 605, 101 A.2d 372 (Ch.Div.1953), rev'd on other grounds, 31 N.J.Super. 466, 107 A.2d 43 (App.Div. 1954), where the party seeking to vacate an arbitration award had not sought the court's intervention until after voluntarily arbitrating a non-arbitrable dispute. The trial judge held that the complaining party had "voluntarily submitted to arbitration and participated in the hearings" and thus could no longer argue it was not bound by what occurred at arbitration. 28 N.J.Super. at 611, 101 A.2d 372. Here, Morris objected to the referral of the matter to arbitration before being forced into that forum. To constitute a waiver of his right to seek appellate review of the August 28, 2003 order, it would have to be shown that Morris intentionally relinquished a known right. Knorr v. Smeal, 178 N.J. 169, 177, 836 A.2d 794 (2003); West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 152, 141 A.2d 782 (1958). Waiver results from a "voluntary act" which implies an election to dispense with something of value. Ibid. The record does not support a finding that Morris intended to voluntarily surrender his argument that arbitration should not have been compelled.
The present circumstances are far more similar to Polshek & Assocs. v. Bergen County Iron Works, 142 N.J.Super. 516, 523, 362 A.2d 63 (Ch.Div.1976), where defendant argued that the plaintiff-architect had "waived its right to dispute the demand [for arbitration] because it participated in choosing the arbiters pursuant to the demand." Judge Petrella rejected that contention, stating:
A claim of waiver cannot be successfully raised against the architect here for participating in the choosing of the arbiters relating to [defendant's] claim when there is no contractual or other basis for arbitration of that dispute. Furthermore, architect's participation was expressly subject to its objection to arbitration and was proper as a contingent measure in the event it was unsuccessful in this suit, since arbitration would have proceeded even if it refused to answer. By refusing to answer, architect risked at its peril being denied the opportunity to participate in the selection of arbiters in accordance with applicable rules.
[Ibid.]
See also N.J. Manufacturers Ins. Co. v. Franklin, 160 N.J.Super. 292, 300, 389 A.2d 980 (App.Div.1978) (holding that the "flagging of [an] objection to the arbitrator's jurisdiction in the submitted memoranda represented an adequate reservation of the coverage issue for judicial determination, subject to the risk of the binding effect of the award on liability and damages in the event of ultimate lack of success on the question whether the coverage issue was arbitrable"). The courts of other jurisdictions have taken an approach similar to Polshek in resolving this waiver question. See Opals on Ice Lingerie v. Bodylines, Inc., 320 F.3d 362, 368-69 (2d Cir.2003); White v. Kampner, 229 Conn. 465, 641 A.2d 1381, 1387 (1994); Salsitz v. Kreiss, supra, 260 Ill.Dec. 541, 761 N.E.2d *1197 at 733; Detroit Demolition Corp. v. Burroughs Corp., 45 Mich.App. 72, 205 N.W.2d 856, 860 (1973), appeal after remand, 50 Mich.App. 129, 212 N.W.2d 827 (1973), rev'd on other grounds, 392 Mich. 769, 219 N.W.2d 613 (1974); Ruffin Woody and Associates, Inc. v. Person County, 92 N.C.App. 129, 374 S.E.2d 165, 167-68 (1988), review denied, 324 N.C. 337, 378 S.E.2d 799, reconsideration denied, 324 N.C. 433, 379 S.E.2d 243 (1989); Azcon Constr. Co., Inc. v. Golden Hills Resort, Inc., 498 N.W.2d 630, 632-33 (S.D.1993).
What was said in Polshek is equally applicable here. When the trial judge erroneously compelled arbitration, Morris had no alternative but to actively pursue and protect his interests in arbitration. If he refused to participate in the arbitration proceedingsas plaintiffs seem to suggest was what Morris had to do to preserve his right to later challenge on appeal the August 28, 2003 orderMorris ran the risk that his later argument in this court as to the inappropriateness of the referral to arbitration might be decided against him and, in that instance, he would be bound by what resulted by default in the arbitration proceedings. A party placed in that circumstance should not have to make such an election.[8]
For these reasons, we conclude that the parties waived their contractual right to arbitrate and, in light of that waiver, the trial judge mistakenly compelled arbitration. We also conclude that the procedural obstacles suggested by plaintiffs as bars to our review of the August 28, 2003 order are insubstantial and without merit. Accordingly, we reverse the order of August 28, 2003 and return the parties to the status quo existing when that order was entered.

IV
Although our reversal of the August 28, 2003 order renders unnecessary our need to examine the arbitrator's amended award, we nevertheless deem it appropriate, for the sake of completeness, to consider the confirmation proceedings memorialized in the trial court's June 10, 2005 judgment.
The parties' contract contained a stipulation that the parties' disputes would be resolved "in accordance with the rules of the American Arbitration Association [AAA]." As we have already observed, the arbitrator rendered a decision on December 8, 2004 that awarded plaintiffs $1,076,769.11 "in full settlement of all claims and counterclaims," and further declared that "[a]ll claims not expressly granted herein are hereby[] denied." Having rendered such a decision, the AAA's Rule 46 limited the arbitrator's power to modify the award to correcting only "clerical, typographical, or computational errors." No one disputes that the award contained computational errors that warranted correction, but the arbitrator exceeded his authority when he granted *1198 relief for renewal commissions not permitted by his original award. Because the original award expressly denied all claims for relief not otherwise mentioned, the arbitrator's later grant of additional relief constituted a modification of that which was already denied and was inconsistent with Rule 46's declaration that "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided."
The arbitrator asserted in his modified award that he not only was authorized and had jurisdiction to "correct clerical, technical, and computational errors," as Rule 46 clearly permits, but that he also had the authority to "deal with inadvertent omissions." The arbitrator found support for this in Century City Med. Plaza v. Sperling, Isaacs & Eisenberg, 86 Cal.App.4th 865, 103 Cal.Rptr.2d 605, 616-17 (2001). We recognize that Century City supports the arbitrator's conclusion that "inadvertent omissions" may be considered after issuance of an award, but we decline to follow it. Rule 46 is unequivocal in limiting the modification of awards to "clerical, typographical, or computational errors" and neither expressly states nor suggests that claims denied through inadvertence could also be revisited. The parties agreed to a resolution of their disputes pursuant to AAA's rules and not a version of those rules expanded beyond their stated limits.
We also reject plaintiffs' argument that AAA Rule 53 provides support for the modified award. Rule 53 states that the "arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." Plaintiffs leap from this language to the remarkable assertion that "it was the exclusive province of [the arbitrator] to determine whether he had the power and duty to issue a corrected Award under . . . Rule 46." The arbitrator understandably did not couch his authority to modify the award on this ground. Moreover, we conclude that whatever Rule 53 may mean, it cannot be a basis for extending the limited authority to modify an award contained in Rule 46 and that it should not be understood as authorizing arbitrators to engage in ad hoc interpretations of AAA's rules. Needless to say, providing arbitrators with the power to expand or contract the scope of the rules as they see fit in a given case would deprive parties of their stipulation to have their disputes resolved pursuant to AAA's rules. The parties were entitled to the resolution of their disputes in conformity with a plain reading of the AAA's rules. The only reasonable interpretation of Rule 46 leads to a conclusion that arbitrators are not authorized to modify their awards beyond the power to correct typographical, clerical and computational errors.
Even if we were to leap beyond the plain meaning of its terms and conclude that Rule 46 permits a consideration of inadvertently omitted issues, the fact remains that the original award did not omitbut includeda ruling on plaintiffs' claim for future renewal commissions. The original award addressed this claim by way of the arbitrator's declaration that "[a]ll claims not expressly granted herein are hereby[] denied." At best, plaintiffs' claim for renewal commissions was not inadvertently "omitted," but was inadvertently "denied." Thus, the rule interpretation upon which the arbitrator based his modified award, even if correct, did not authorize the consideration of a claim that had already been rejected, only a claim which remained undecided through omission.
With the full resolution of all the claims asserted in the original award, the arbitrator was thereafter empowered only to modify the award for "clerical, typographical or computational errors." We conclude that the arbitrator exceeded this authority *1199 and acted contrary to the functus officio doctrine when he modified his award to include future renewal commissions. Accord Kimm v. Blisset, LLC, 388 N.J.Super. 14, 905 A.2d 887 (App.Div.2006).
The trial judge, in considering the arguments in favor of and against confirmation of the modified award, was obligated to refuse confirmation of that part which exceeded the arbitrator's limited authority to correct clerical, typographical and computational errors. Ibid. Although now moot in light of our reversal of the August 28, 2003 order, we conclude, for the sake of completely resolving the interesting issues raised in this appeal, that the trial judge erred in confirming that part of the modified award which granted renewal commissions.

V
We are mindful that our resolution of this appeal has the unfortunate consequence of rendering meaningless the time and effort the parties expended in arbitration and in the ensuing confirmation proceedings. However, we reject the argument that we should affirm solely for economical reasons. As we have endeavored to explain, an affirmance of the August 28, 2003 order solely for the sake of preserving the parties' efforts in arbitration would sacrifice their valuable right to a judicial resolution of their disputesa right that has not been waived and ought not be overridden by a ruling which would serve nothing but the interests of efficiency. Economyalthough certainly a highly desirous goal in the resolution of disputescannot alone serve as the cause for a party's loss of access to the courts when concepts of fairness and justice mandate otherwise. See, e.g., McFadden v. Turner, 159 N.J.Super. 360, 371, 388 A.2d 244 (App.Div.1978).
In these circumstances, the interests of justice outweigh the goal of economy and require that we reverse the order of August 28, 2003 and remand the matter for further proceedings in conformity with this opinion. The cross-motions for summary judgment that were declared by the judge to be "moot" in the August 28, 2003 order should be relisted for argument and promptly decided. Whatever, if anything, survives summary judgment should thereafter be scheduled for trial.
Were it not mooted by our disposition of the August 28, 2003 order, we would also reverse the June 10, 2005 judgment insofar as it confirmed that part of the arbitrator's amended award which included an award for renewal commissions.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] After the judge announced his sua sponte decision to compel arbitration, Morris's counsel argued that plaintiffs had waived the right by filing suit and that his clients had joined in the waiver by participating in the suit. He argued that "the arbitration clause can be waived if in fact there is the consent of all the parties," to which plaintiffs' counsel responded: "I would concur, without further argument, Judge."
[2] Morris also objected to certain other calculations and sought their correction in his own informal submission to the arbitrator.
[3] That the parties did not believe the August 28, 2003 order had completely terminated the trial court proceedings is demonstrated by the fact that they filed their cross-motions regarding the arbitration award in this civil action. That the trial judge did not believe the August 28, 2003 order had terminated the trial court proceedings is demonstrated by the fact that he did not direct that these motions be brought by way of the filing of a new action.
[4] See, e.g., Curtis, supra, 837 So.2d at 1156 (applying a Florida rule of appellate procedure that permits an appeal as of right from a non-final order that "determine[s] . . . the entitlement of a party to arbitration," Fla. R.App. P. 9.130(a)(3)(C)(iv)).
[5] The New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, was repealed with the Legislature's adoption of a modified version of the Uniform Arbitration Act of 2000, codified at N.J.S.A. 2A:23B-1 to -32. It is the former arbitration act, however, that applies to the matter at hand. See N.J.S.A. 2A:23B-3.
[6] We observe that the new arbitration act although not applicable herealso requires a stay, and not a dismissal, of the suit in such circumstances. See N.J.S.A. 2A:23B-7(f) and (g). We also observe that the new act permits the right to immediately appeal some orders that may result in the same or similar context. N.J.S.A. 2A:23B-28(a) states that an appeal "may be taken from: (1) an order denying a summary action to compel arbitration; (2) an order granting a summary action to stay arbitration; (3) an order confirming or denying confirmation of an award; (4) an order modifying or correcting an award; (5) an order vacating an award without directing a rehearing; or (6) a final judgment entered pursuant to this act." This statute does not appear to expressly permit an appeal from an order staying an action and compelling arbitration, although it does expressly permit the appeal of an order denying such relief. See Deiab, supra, 138 S.W.3d at 742 (applying a statute similar to N.J.S.A. 2A:23B-28(a) and concluding that this statute does not permit an immediate appeal of an order compelling arbitration). We need not now determine whether the order in question would be immediately appealable had its entry been governed by the new arbitration act.
[7] We have recognized that, by seeking and obtaining the confirmation of an arbitration award, a party waives the right to seek appellate review of interlocutory orders that preceded that determination. See Grey v. Trump Castle Associates L.P., 367 N.J.Super. 443, 448-49, 843 A.2d 354 (App.Div.2004). That, however, is not what occurred here. Morris opposed entry of the order compelling arbitration and opposed confirmation of the arbitrator's award. There is no inconsistency in his later pursuit of appellate review of the order compelling arbitration such as was found in Grey.
[8] We also reject plaintiffs' invocation of the doctrine of judicial estoppel. This doctrine only acts as a bar to the assertion of a position contrary to that previouslyand successfullyasserted. State v. Jenkins, 178 N.J. 347, 359, 840 A.2d 242 (2004); Kimball Int'l v. Northfield Metal Prods., 334 N.J.Super. 596, 606, 760 A.2d 794 (App.Div.2000), certif. denied, 167 N.J. 88, 769 A.2d 1051 (2001); Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 620, 581 A.2d 91 (App.Div.1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991). Although Morris once sought to compel arbitration, he withdrew that motion and, as a result, the trial judge was not required to rule on that application. Accordingly, since Morris did not successfully obtain that relief, the doctrine of judicial estoppel cannot serve to bar him from later contending that the right to arbitrate had been mutually waived by the parties.