237 N.J. Super. 385 (1989)
568 A.2d 89
FRANK FARESE, PLAINTIFF-APPELLANT,
v.
JAMES M. MCGARRY, JR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1989.
Decided December 18, 1989.
*387 Before Judges MICHELS and BROCHIN.
Herbert Levenson argued the cause for appellant (Herbert Levenson, attorney; Herbert Levenson, on the brief).
Thomas A. Pavics argued the cause for respondent (Schachter, Cohn, Trombadore & Offen, attorneys; Thomas A. Pavics, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Defendant James M. McGarry, Jr. rented a one-family house from plaintiff Frank Farese pursuant to a written lease. Despite a notice to vacate, the tenant continued in possession for approximately six and a half months after the expiration of the term of the lease. After the tenant had moved out, the landlord sued him, seeking compensation for damage which the tenant had allegedly caused to the property, twice the monthly rent pursuant to N.J.S.A. 2A:42-6 for the period during which he had remained in the house after the expiration of his lease, and an attorney's fee.
The tenant counterclaimed for specific performance or damages. He claimed a breach of his option to purchase the property, and he sought damages for the breach and compensation for the amount by which the landlord had allegedly been *388 unjustly enriched as the result of improvements made by the tenant to the property in anticipation of his acquiring it under what he believed was his purchase option.
The case was tried to a jury which returned its verdict on special interrogatories. It rejected the landlord's claims that he was entitled to damages because the tenant had continued in possession beyond the term of his lease or because the premises had been injured by the tenant's neglect. The jury also found that the landlord had not breached his contractual obligation to sell the property to the tenant. However, the jury returned a verdict awarding the tenant $13,000 as the reasonable value of improvements which the tenant had made to the property.
The landlord appealed. He contends that the trial court erred in permitting the jury to return a verdict based on "an implied contract or quasi-contract" when both parties had pleaded and relied upon an express contract dealing with the same subject matter, and that the court should have granted his motion for a new trial on the ground that the verdict was against the weight of the evidence. He also asserts that the court should have excluded the tenant's testimony about the reasonable value of the work which he expended on repairs to the house because, according to the landlord, the lease called for the tenant to make those repairs as part of the rent for occupying the premises. In addition, the landlord alleges that the tenant's counterclaims are barred by an arbitration clause in the lease and that the court permitted evidence of prior negotiations to vary the terms of the lease in violation of the parol evidence rule.
The first count of the tenant's counterclaim seeks specific performance or damages for violation of an option contained in the lease entitling the tenant to purchase the property. The second count alleges that the tenant improved the property in reliance on the purchase option, that the landlord breached the option agreement by refusing to convey, and that the landlord was unjustly enriched as the result of his breach.
*389 Both counts are predicated on a single theory of the landlord's liability, that he gave his tenant an option to purchase the leased premises and breached his option agreement by refusing to convey. The difference between the two counts is the measure of damages which each asserts or implies. The first count does not specify a measure of damages. Under that count, a counterclaimant would be entitled to prove general damages measured by the difference between the option price of the property and its fair market value at the time that the option was exercisable. If there was no surprise to his adversary, he would also be entitled to prove other measures of damages; for example, expenditures which he reasonably incurred in reliance on being able to exercise the option agreement. The second count alleges, apparently as an alternative measure of damages, that the landlord "has been unjustly enriched in the improvements made to his property to the extent of the value of said improvements." If the tenant had succeeded in showing that the landlord had breached the tenant's option to purchase the leased property, the tenant would surely have been entitled to show the value of the improvements as a measure of his damages. If the issue before the trial court or before this court were, as the landlord seems to be arguing that it is, whether the tenant could properly offer evidence in support of both counts, the answer would clearly be that he could. Alternative counts are permissible and these two alternative counts do not allege inconsistent facts. R. 4:5-6.
What actually happened in the present case, however, was that the case was pleaded on the theory that the landlord breached his obligation under the purchase option. But the case was submitted to the jury on a different theory. The court instructed the jury as follows:
... a quasi contract is an obligation created by the law, for reasons of justice, without regard to the expression of ... assent by either words or acts. Quasi-contractual obligations rest upon the equitable principles that a person shall not be allowed to enrich himself unjustly, at the expense of another, and that a man is deemed to have performed that which he ought to do.

*390 ....
In other words, if you determine that the improvements made by this defendant on the premises were in reliance on an option he thought he had, which he attempted to exercise, as opposed to being done pursuant to the lease agreement, whereby he was going to be reimbursed only for materials, and as opposed to being done solely to make the premises occupiable by himself during a lease term because he was getting a favorable rent, then you will determine what if any amount he is entitled to receive for those alleged improvements.
To this charge, the landlord made the following objection:
I also request your Honor that you would indicate that there cannot be a claim for unjust enrichment implied in a contract implied in law, a quasi contract, where there is a written contract.
He also made a similar argument in support of his motion for the entry of judgment notwithstanding the verdict.
It was not error for the trial judge to have submitted the case to the jury on a legal theory which was not asserted in the pleadings, provided, of course, that the legal theory was correct. A complaint or counterclaim is not required to spell out the legal theory upon which it is based. Its necessary contents are only "a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled." R. 4:5-2. Furthermore, R. 4:9-2 provides:
When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order.... If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings and the pretrial order, the court may allow the pleadings and pretrial order to be amended and shall do so freely when the presentation of the merits of the action will be thereby subserved and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.
In the present case, defendant's counterclaim alleged that the landlord had been unjustly enriched by the tenant's improvements because the landlord had breached his option agreement. One of the theories upon which the court submitted the case to the jury was that the landlord was unjustly enriched because the tenant reasonably believed that he had an option agreement. To the extent that submission of the case on that *391 alternate theory involved an implicit amendment of the pleadings, the landlord was not prejudiced. That brings us to the question whether the legal theory which the court injected into the case was correct. For the following reasons, we hold that it was.
The lease between the parties clearly confers a right of first refusal on the tenant, not an option. However, the language of the right of first refusal clause could very well have been confusing to someone who, like the tenant in this case, was not a lawyer nor otherwise experienced in interpreting leases. A provision of the lease itself refers to a prior oral agreement between the parties which they intended should survive the execution of the lease. The lease indicates that that prior agreement dealt with improvements which the tenant was to make to the house and, perhaps, with other matters as well. The lease was drafted by the landlord's attorney who negotiated directly with the tenant. From all of the circumstances, the jury could reasonably have concluded that the tenant had an honest belief that he had an absolute contractual right to purchase the property, and that the landlord, directly or through his attorney, contributed to the tenant's misapprehension.
The principle upon which the trial court correctly submitted this case to the jury is analogous to the rule that "where one erects a building upon the lands of another in the mistaken belief that he is the owner thereof, and the true owner, having knowledge of the improvement, does nothing to apprise the builder of the true situation," the builder is entitled to relief.[1]See Riggle v. Skill, 9 N.J. Super. 372, 378 (Ch.Div. 1950), aff'd 7 N.J. 268 (1951), and cases cited therein. In such a case, the courts have conditioned return of possession to the owner upon his paying adequate compensation for the reasonable cost of *392 the improvements or, in an appropriate case, they have permitted the builder of the improvements to retain the property upon paying its reasonable value to the true owner. See Brick Tp. v. Vannell, 55 N.J. Super. 583, 593 (App.Div. 1959).
In the present case, the tenant made improvements to the landlord's house as the result of a mistake, which the landlord encouraged or at least did not dispel, not about the location of boundary lines, but about whether he had a valid option to purchase the property for an agreed price. Upon those facts, we hold that the tenant was entitled to recover under a theory of quasi-contract or unjust enrichment. Cf. Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294, 305-307 (App.Div. 1963); Heim v. Shore, 56 N.J. Super. 62, 74-75 (App.Div. 1959); Shapiro v. Solomon, 42 N.J. Super. 377, 383-385 (App.Div. 1956).
The landlord objects, however, that a remedy in quasi-contract is unavailable because the tenant has pleaded an express contract. For this proposition he cites C.B. Snyder Realty Co. v. Nat. Newark, Banking Co., 14 N.J. 146, 162-163 (1953) and Moser v. Milner Hotels, Inc., 6 N.J. 278 (1951). However, those cases hold only that where parties have made an express contract for, e.g., the performance of services, and that express contract has not been either rescinded by consent or materially breached, recovery is not available on a theory of implied contract; a subsisting contract for the performance of services in exchange for an agreed price is inconsistent with an implied contract or a quasi-contractual obligation to compensate the same services upon some different basis. See Shapiro v. Solomon, supra.
In the present case, the lease does not include an agreement which is inconsistent with recovery under a theory of unjust enrichment. The pertinent provision of the lease says:
The Tenant agrees to keep the premises and the property in good repair following the Tenant's completion of all the renovations in the kitchen and linen closet as agreed to by the parties prior to the signing of this agreement. The Landlord will be responsible for the cost of all material and supplies *393 used and necessary for the agreed upon renovations (not to exceed $500). [Emphasis added.]
If the lease had stated that the tenant would renovate the house as part of his rental obligation, he could not have recovered for their value on a quasi-contract theory. But the reference in the lease to a prior agreement between the parties does not indicate the terms of that prior agreement. Its language is not inconsistent with the tenant's claim that he made the improvements in reliance on his reasonably founded expectation that he would be able to buy the property. Because there is no inconsistency between the terms of the lease and the claim for relief upon which the jury awarded damages to the tenant, Moser and C.B. Snyder Realty Co. are no bar.
However, the amount of the award to the tenant was without support in the evidence. The proper measure of damages was the value of the improvements to the landlord. The only evidence submitted on the issue was the testimony by the tenant that the reasonable value of the work which he did on the house was $3,150. He calculated that amount by valuing his labor at $15 an hour for 210 hours. In the absence of any contrary testimony, that is the best evidence available of the value which the renovations had to the landlord.
The tenant conjectures that the jury's verdict of $13,000 represents the jury's estimate of the amount attributable to the tenant's renovations out of the difference between the $70,000 price for which the tenant claimed he was entitled to purchase the property and what he contended was its current market value of about $90,000. However, the verdict cannot be upheld on that basis. The answers to the interrogatories submitted to the jury show that the $13,000 verdict for the tenant was the jury's valuation of "the reasonable value of the improvements made on the property." The record contains no competent evidence tending to show that any part of the alleged increase in the value of the property in excess of $3,150 is attributable to those improvements. Furthermore, even the evidence of the current value of the property came either from the tenant *394 himself, with no foundation of fact or expertise, or from a hearsay report. Accordingly, the judgment must be reduced to $3,150.
The landlord's remaining arguments are without substantial merit. R. 2:11-3(e)(1)(E). The contention that the trial "court erred in disregarding the terms of the lease concerning repairs and permitted defendant to testify to the reasonable value of his services" ignores the reference in the lease to the parties' prior agreement about renovations and is premised on testimony of the landlord which was rejected by the jury.
The lease provided that disputes concerning repairs to the premises would be submitted to arbitration. However, as a condition precedent to arbitration, "proper and necessary notices" were to be given to the allegedly defaulting party to fulfill his obligations with respect to repairs. That was not done. Furthermore, the landlord's right to rely on arbitration was waived by his filing a complaint which alleged a claim for injury to the property and by filing an answer to the counterclaim which did not allege arbitration as a defense until it was amended approximately nine months after the complaint was filed and two weeks before trial.
Testimony about negotiations preceding the lease did not violate the parol evidence rule. It was not offered to vary the lease. The testimony was relevant both to the prior agreement, presumably oral, which is referred to in the lease, and to show the basis for the tenant's good faith belief that he had a purchase option. Furthermore, the trial court correctly held that the lease was ambiguous and that prior negotiations were admissible as an aid to construing the agreement and explaining its ambiguities. Garden State Plaza Corp. v. S.S. Kresge Company, 78 N.J. Super. 485, 496 (App.Div. 1963).
The judgment is modified in accordance with this opinion to award defendant-counterclaimant $3,150 rather than $13,000 on his counterclaim. It is affirmed in all other respects. No costs are allowed.
NOTES
[1] Since the issue was not raised by the parties, we do not deal with the question whether the cause of action submitted to the jury was equitable rather than legal. Plaintiff has no constitutional right to a non-jury trial.