959 A.2d 290 (2008)
403 N.J. Super. 508
Steven SPAETH, Plaintiff-Respondent,
v.
Vathsala SRINIVASAN, Defendant-Appellant.
No. A-2834-07T1.
Superior Court of New Jersey, Appellate Division.
Submitted October 16, 2008.
Decided November 20, 2008.
*292 Vathsala Srinivasan, appellant pro se.
Ronald J. Brandmayr, Jr., attorney, Hackensack, for respondent.
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
This matter is before us by order of the Supreme Court granting defendant Vathsala Srinivasan leave to appeal from interlocutory orders of the Law Division denying defendant's motion to dismiss plaintiff's complaint based on plaintiff's failure to arbitrate and summarily remanding on the limited issue of whether defendant waived her contractual right to arbitration. For the following reasons, we reverse.
The pertinent facts are essentially undisputed. On December 1, 2005, the parties executed a contract in which defendant agreed to sell plaintiff, a certified public accountant, her list of 242 clients for whom she had been preparing annual tax returns and providing other tax services. Consideration was to be an initial, non-refundable payment of $20,000, together with 50% of the balance sum (a figure calculated by totaling all collections received from clients since the turnover date minus the $20,000 down payment), payable on June 1 of each year plus interest. The contract included an arbitration clause, which reads:
Any controversy or claim arising out of or relative to this AGREEMENT, of the breach thereof, shall be submitted to arbitration before a single arbitrator, subject to the commercial arbitration rules of the American Arbitration Association, with venue for all proceedings to be held in Union County, New Jersey, with the non prevailing Party to pay the cost of the Arbitrator.
The parties also provided that their contract was to be governed by New Jersey law.
Disputes arose soon after the contract's execution. Plaintiff alleged that defendant did not refer all of her clients to him and had misrepresented the fees she charged them. Defendant denied these claims and blamed plaintiff's inflexibility and ineptitude for his business shortfall. Because of this conflict, plaintiff refused to make any payments to defendant after the initial $20,000 installment.
After failing to make the scheduled June 1, 2006 payment, on August 10, 2006, plaintiff filed suit against defendant in the Special Civil Part, small claims division, which he later voluntarily dismissed on September 13, 2006. Three months later, on December 15, 2006, plaintiff filed anew in the Law Division, this time alleging *293 breach of contract, fraud in the inducement and tortious interference with prospective economic advantage. Defendant pro se answered on February 9, 2007, raising various affirmative defenses exclusive of the arbitration clause, and counterclaimed, asserting plaintiff's breach of contract, tort and fraud. Plaintiff never answered, and consequently, default was entered against him on the counterclaim on January 10, 2008, pursuant to Rule 4:43-1; 4:43-4; and 4:6-1(a).
As a Track II case, the discovery period was set at 300 days with an end date of December 6, 2007. Minimal discovery transpired, however. In the meantime, the parties attempted unsuccessfully to mediate their dispute on May 10, 2007. And less than three months after filing her answer, defendant moved for summary judgment, which was denied by order of June 4, 2007. Defendant, still proceeding pro se, then moved on June 25, 2007, for a stay of discovery pending appeal, reconsideration of the court's June 4, 2007 order, and dismissal of plaintiff's complaint with prejudice, asserting for the first time, just six months after the filing of the complaint, that plaintiff's cause of action was barred by the contractual arbitration clause, which deprived the court of jurisdiction in the matter. Defendant reiterated this defense less than two months later in her July 21, 2007 opposition to plaintiff's motion to suppress her answer, raising once again the issue of mandatory arbitration under their contract. By order of October 3, 2007, the judge denied defendant's motions for stay of discovery, reconsideration, and dismissal. Defendant then moved for leave to appeal the Law Division's interlocutory orders of June 4 and October 3, 2007, and for a stay, which relief we denied. Thereafter, as noted, the Supreme Court granted leave to appeal, limited to the issue of whether defendant waived her right to arbitration.
At the outset, we note that no one contests the validity or enforceability of the contract's mandatory arbitration clause under governing New Jersey law, or that the claims of both parties in this litigation are otherwise subject thereto. Rather, plaintiff simply argues that defendant's failure to reserve the right to arbitrate in her answer, combined with plaintiff's time and expenses in these proceedings, satisfied the requirements for waiver of the right to arbitrate. We disagree.
In New Jersey, consent arbitration is authorized and approved by statute. Our Uniform Arbitration Act of 2003(Act), N.J.S.A. 2A:23B-1 to -32, L. 2003, c. 95, authorizes courts to recognize and enforce arbitration agreements. N.J.S.A. 2A:23B-5, -6;[1]see also Wein v. Morris, 194 N.J. 364, 376, 944 A.2d 642 (2008); Van Duren v. Rzasa-Ormes, 394 N.J.Super. 254, 257, 926 A.2d 372 (App.Div.2007), aff'd o.b., 195 N.J. 230, 948 A.2d 1285 (2008). Our courts have long noted our public policy that favors the "use of arbitration proceedings as an alternative forum." Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 489, 610 A.2d 364 (1992); see also Delta Funding Corp. v. Harris, 189 N.J. 28, 39, 912 A.2d 104 (2006). "An arbitration agreement is a contract and is subject, in general, to the legal rules governing the *294 construction of contracts." McKeeby v. Arthur, 7 N.J. 174, 181, 81 A.2d 1 (1951) (citations omitted); see also Hojnowski v. Vans Skate Park, 187 N.J. 323, 343, 901 A.2d 381 (2006). An arbitration clause's validity is determined by "considering the intentions of the parties as reflected in the four corners of the written instrument." Leodori v. CIGNA Corp., 175 N.J. 293, 302, 814 A.2d 1098 (2003).
To be sure, a waiver will preclude the enforcement of a contractual provision to arbitrate. Waiver under New Jersey law "involves the intentional relinquishment of a known right and thus it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them." Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291, 544 A.2d 377 (1988). In other words, for there to be a waiver of arbitration rights, a party must know of the right and affirmatively reveal the intent to waive the right. Knorr v. Smeal, 178 N.J. 169, 177, 836 A.2d 794 (2003). "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Ibid.
Parties can expressly waive their rights to arbitration. Wein, supra, 194 N.J. at 376, 944 A.2d 642. They can also waive these rights by implication. Knorr, supra, 178 N.J. at 177, 836 A.2d 794. "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or by indifference." Ibid. "The party waiving a known right must do so clearly, unequivocally, and decisively." Ibid.
There is a presumption against waiver of an arbitration agreement, which can only be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum. Am. Recovery Corp. v. Computerized Thermal Imaging, 96 F.3d 88, 92 (4th Cir.1996); Sherrock Bros., 260 Fed.Appx. 497, 500 (3d Cir.2008). There is no single test for the type of conduct that may waive arbitration rights. In fact, "the mere institution of legal proceedings ... without ostensible prejudice to the other party" does not constitute a waiver. Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., 131 N.J.Super. 159, 167, 329 A.2d 70 (App.Div. 1974); see also Gavlik Constr. Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3d Cir. 1975) ("it is not the inconsistency of a party's actions, but the presence or absence of prejudice which is determinative of the issue of waiver"). In Hudik-Ross, for instance, we found no waiver when arbitration was not demanded "until four months after the institution of plaintiff's lawsuit" and the promise to arbitrate was pleaded in an affirmative defense. 131 N.J.Super. at 167, 329 A.2d 70. Rather, the presence or absence of prejudice has been deemed determinative of the issue of waiver. Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J.Super. 138, 150, 952 A.2d 1140 (App.Div.2008). Thus, in Farese v. McGarry, 237 N.J.Super. 385, 568 A.2d 89 (App.Div.1989), we found the plaintiff landlord's right to rely on arbitration was waived by his filing a complaint which alleged a claim for injury to the property and by filing an answer to the counterclaim which did not allege arbitration as a defense until it was amended approximately nine months after the complaint was filed and two weeks before trial. Id. at 394, 568 A.2d 89.
Similarly, the Court found mutual waiver of the contractual right to arbitrate where the lawsuit was pending for three-and-one-half years before a party filed a motion to compel arbitration. Wein, supra, 194 N.J. at 376, 944 A.2d 642. There,

*295 [t]he plaintiffs filed their complaint in Superior Court without reference to arbitration, demonstrating their intent to resolve the dispute in court. Defendants likewise filed an answer and asserted several counterclaims without seeking enforcement of the arbitration clauses. Thereafter, the parties engaged in almost five years of court-monitored discovery. Even after defendants filed a motion to compel arbitration, and then withdrew it, the court permitted discovery to continue. If that were not enough, the parties clearly expressed their desire to waive arbitration when they objected to the trial court's order compelling them to submit to arbitration and asserted at the hearing that they wished to waive arbitration and proceed in court.
[Ibid.]
The Court found that faced with that unequivocal waiver, coupled with the duration of the discovery proceedings and the trial judge's extensive involvement in managing this suit, it was error for the judge to order the matter to arbitration. Ibid.
On the other hand, simply wasting a party-opponent's time and money was found to be insufficient to constitute prejudice under the analogous FAA. Rush v. Oppenheimer & Co., 779 F.2d 885, 888 (2d Cir.1985). Also, when parties specifically indicate they will be moving to compel arbitration, the opposing party is unable to show prejudice. Angrisani, supra, 402 N.J.Super. at 150-51, 952 A.2d 1140.
Viewed against this backdrop, we are satisfied that defendant has not waived her right to arbitration. The underlying litigation has been neither active nor prolonged as in Wein, supra, and Farese, supra. Defendant, who appeared pro se throughout, asserted her right to arbitration only six months after plaintiff filed his Superior Court complaint, well before any meaningful exchange of discoverymuch less the discovery end dateand well in advance of fixing a trial date. Indeed, the litigation had not even reached the point of noticing and taking depositions or filing dispositive motions, save, of course, for defendant's efforts to dismiss the lawsuit. And when defendant did assert her right to arbitrationtwice in very short order she acted thereafter in accordance with her intention to seek arbitration. Although defendant never formally moved to compel arbitration, there can be no doubt about her desire to extricate herself from this litigation. Weeks after first asserting the right to arbitration, she raised anew the arbitration agreement, this time in opposition to plaintiff's motion to suppress her answer, and sought to stay discovery as minimal as it waswhile seeking leave to appeal from the trial court's order denying her motion to dismiss.
Unlike Farese, defendant herethe party who is asserting the right to arbitrate did not initiate the subject legal action or choose the judicial forum selected by her adversary. Instead, she simply answered a complaint filed against her in the Law Division, and while she asserted a counterclaim to which plaintiff never responded and on which default had been rendered, defendant's participation remained more passive than active, more reluctant than assertive.
Moreover, given defendant's uncounselled status, we assume the relatively short delay in asserting her right to arbitration was more inadvertent than deliberate, more the result of unfamiliarity with court procedure than planned strategy. Furthermore, the record is devoid of any proof that the delay inured to the apparent advantage of defendant on the one hand, or, on the other hand, caused demonstrable prejudice to plaintiff, save for the entry of default which would be precluded, *296 in any event, by a finding that there has been no valid or effective waiver.
In sum, while defendant's conduct in this case may not have been a model, we perceive no bad faith on her part or conscious design to frustrate her adversary's rights. When coupled with the relatively brief passage of time, lack of extensive discovery, absence of prejudice to plaintiff, and defendant's repeated efforts to dismiss the litigation, defendant's conduct fell far short of the kind necessary to warrant depriving a party of the arbitration remedy she bargained for. Under these circumstances, we conclude defendant did not waive her right to arbitration.
Thus, we vacate the orders of June 4, 2007, October 3, 2007 and January 10, 2008, and remand to the Law Division for entry of an order directing the matter be arbitrated.
NOTES
[1] The Act's language, N.J.S.A. 2A:23B-6, mirrors its federal counterpart, the Federal Arbitration Act (FAA), 9 U.S.C. § 1-16, which states that arbitration agreements "shall be valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.S. § 2. Our Legislature expressed its intent to join other states in following the FAA provision stating, "In applying and construing this uniform act, consideration shall be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." N.J.S.A. 2A:23B-29.