**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3083-23

JULIEN J. COPPI and
ALEXIS J. COPPI,

       Plaintiffs-Appellants,

v.

FAMILY ADVENTURES
NORTH JERSEY, LLC d/b/a
URBAN AIR TRAMPOLINE
AND ADVENTURE PARK, and
UATP MANAGEMENT, LLC,

       Defendants-Respondents.

_____

Argued March 26, 2025 – Decided April 24, 2025

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0358-23.

John C. Lowenberg argued the cause for appellants (Stark & Stark, PC, attorneys; Evan J. Lide, of counsel and on the briefs; John C. Lowenberg, on the briefs).

Andrew R. Churchill argued the cause for respondent Family Adventures North Jersey, LLC (Reilly,

McDevitt & Henrich, PC, attorneys; Michael J. Jubanyik and Andrew R. Churchill, on the brief).

Deborah J. Davison argued the cause for respondent UATP Management, LLC (Wood Smith Henning & Berman, LLP, attorneys; Deborah J. Davison and Kevin M. Lenihan, on the briefs).

PER CURIAM

In this negligence action, plaintiff Julien J. Coppi[1] appeals from a May 2, 2024 Law Division order compelling arbitration and staying further litigation against defendants Family Adventures North Jersey, LLC, d/b/a Urban Air Trampoline and Adventure Park (Urban Air), and UATP Management, LLC (UATP) (collectively, defendants). In his complaint, plaintiff claimed he was seriously injured at Urban Air's premises in South Hackensack (Premises or Park), when he struck his head while jumping on a trampoline. During discovery, plaintiff acknowledged he signed Urban Air's "Customer Release, Assumption of Risk, Waiver of Liability, Arbitration and Indemnification Agreement" (Agreement), before entering the Park with his toddler son.

On appeal, plaintiff argues the court erroneously: determined he is bound by the terms of the Agreement; found the arbitration clause provides adequate

---

[1] All references to plaintiff are to Julien J. Coppi. The per quod claim of his wife, Alexis Coppi, is wholly derivative.

notice of his waiver of his rights to a jury trial; failed to conduct a hearing on enforcement of the arbitration clause; and failed to analyze whether defendants "waived any purported right to arbitrate by unfairly benefiting from [plaintiff's] good-faith discovery production prior to filing their motion[s]."

During oral argument before this court, we inquired whether the Agreement's arbitration provision applies to UATP, which is not expressly referenced in the provision. Thereafter, at our request, plaintiff and UATP filed supplemental briefs addressing our concerns.

UATP contends plaintiff failed to raise the argument on appeal and, as such, the issue is waived. Addressing the merits, UATP asserts: arbitration agreements must be read liberally in favor of arbitration; UATP is a "Protected Party" under the terms of the Agreement; and "plaintiff's claims fall within the scope of the arbitration provision."

Plaintiff counters UATP cannot enforce the arbitration provision because "[it] is not named anywhere in the arbitration section of the Agreement," and the "minimal reference" to UATP in the release section does not afford UATP the right to arbitrate plaintiff's claims. In the alternative, plaintiff argues a plenary hearing is required to determine whether there is a factual dispute regarding UATP's rights under the arbitration provision.

A-3083-23

Having conducted a de novo review of the record, see Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020), we conclude, as did the motion court, plaintiff voluntarily signed the Agreement on behalf of himself and his son, and the terms of the arbitration provision are unambiguous as they pertain to plaintiff and Urban Air. However, because Urban Air participated in extensive discovery with plaintiff prior to moving to compel arbitration and stay litigation, for the reasons that follow, we conclude Urban Air's litigation conduct waived its right to arbitration.

We therefore affirm in part and vacate the court's order compelling arbitration and staying litigation between plaintiff and Urban Air. The matter is remanded to the trial court for further proceedings, including lifting the stay and, in its discretion, affording the parties the opportunity to conduct further discovery.[2]

On de novo review, we further conclude the Agreement's arbitration provision specifically references "Urban Air" and "Participant," but does not expressly reference UATP. Nor is UATP's affiliation with Urban Air clear from

---

[2] In its oral decision granting defendants' motions, the court denied as moot plaintiff's unopposed motion to extend discovery. Although plaintiff's motion was not included in his appellate appendix, we glean from the record plaintiff claimed he did not have an opportunity to depose Urban Air's representatives or have his expert conduct a site inspection.

A-3083-23

the motion record.  Because this threshold issue was not argued before the motion court, we decline to exercise de novo review.  See Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018) (holding "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa").  Accordingly, we vacate the order staying litigation and compelling arbitration between plaintiff and UATP, and remand for the court to lift the stay and determine the issue in the first instance.

To facilitate the motion court's review, plaintiff and UATP shall provide their appellate merits and supplemental briefs to the court within five days of our judgment.  We leave to the court's sound discretion whether to order additional briefing, limited discovery, and testimony.  In remanding this issue, we do not suggest a preferred result.

I.

We summarize the pertinent facts and procedural history from the motion record.  In January 2023, plaintiff filed his initial complaint only against Urban Air.  In his complaint, plaintiff claimed he sustained serious bodily injury at the Premises on February 22, 2022, "when his head came into contact with a dangerous condition, believed to be an exposed hard surface in the area of the trampoline pads."

Prior to purchasing tickets at the Premises, plaintiff signed the Agreement which was displayed on a computer screen. The following provisions of the Agreement are pertinent to this appeal.

The second paragraph of the preamble indicates the Agreement was "between [Urban Air] and the undersigned in his/her own capacity ('Adult Participant') and if any minor(s) is/are named in the signature block below (collectively 'Child Participant[,'], whether one or more) on behalf of, and as the parent or legal guardian for such Child Participant(s) (all parties collectively, 'Participant')."

Paragraph four of the Agreement provides, in pertinent part, "Assumptions of Risks. By signing this Agreement, entering the Premises and/or participating in the Activities, Adult Participant, on behalf of himself/herself, and on behalf of the Child Participant(s), warrants that he/she has read this Agreement in its entirety . . . and that Participant knowingly assumes all risks inherent with the Activities." (Emphasis added).

Paragraph eight, titled, "Acknowledgments by Participant," provides "Adult Participant acknowledges on behalf of himself/herself and on behalf of any Child Participant(s) that he/she/they would not be granted access to the Premises or the ability to participate in the Activities but for his/her agreement

6

to the terms and conditions of this Agreement and the[] acknowledgements" that

followed.

The Agreement also contains a release clause in paragraph five and an

indemnity provision in paragraph six. In paragraph five, the Agreement defines

"Protected Parties" as "Urban Air, UATP Management, LLC, UATP IP, LLC,

[and] Mejor Angora LLC."

Paragraph seven provides verbatim:

> Dispute Resolution/Waiver Of Jury Trial. If a dispute
> arises under this Agreement or from Participant's use of
> the Premises or participation in the Activities, the
> Participant shall engage in good faith efforts to mediate
> a settlement prior to filing a demand for arbitration.
> Should the dispute not be resolved by mediation, Urban
> Air and the Participant agree that all disputes,
> controversies, or claims arising out of the Participant's
> use of the Premises or participation in the Activities
> shall be submitted to binding arbitration before and in
> accordance with the Commercial Rules of the American
> Arbitration Association then in effect. It is
> acknowledged, understood and agreed that any such
> arbitration will be final and binding and that by
> agreeing to arbitration, the parties are waiving their
> respective rights to seek remedies in court, including
> the right to a jury trial. The parties waive, to the fullest
> extent permitted by law, any right they may have to a
> trial by jury in any legal proceeding directly or
> indirectly arising out of or relating to this Agreement,
> whether based in contract, tort, statute (including any
> federal or state statute, law, ordinance or regulation), or
> any other legal theory. **It is expressly acknowledged,
> understood and agreed that: arbitration is final and**

7

**binding; the parties are waiving their right to seek legal remedies in court including the right to a trial by jury; pre-arbitration discovery generally is more limited than and different from that available in court proceedings; the arbitrator's award is not required to include factual findings or legal reasoning; and any party's right to appeal or vacate, or seek modification of, the arbitration award, is strictly limited by law.** It is understood, acknowledged and agreed that in any such arbitration, each party will be solely responsible for payment of his/her/its own counsel fees, with the costs of arbitration borne equally by the parties. Any such arbitration will be conducted in the State of New Jersey and the law of the State of New Jersey shall apply.

The Agreement reflects plaintiff signed "on behalf of [him]self and [his son] . . . and agree[d] to its terms."

In March 2023, Urban Air answered the complaint and asserted twenty-five affirmative defenses. In its twenty-fourth affirmative defense, Urban Air "assert[ed] all rights and defenses available to it under the [Agreement] signed and submitted by [p]laintiff[]." Notably, however, Urban Air also "demand[ed] a trial by jury on all issues involved herein" and its counsel certified, pursuant to <u>Rule</u> 4:5-1, "it appear[ed] there [we]re no other actions or arbitrations related to this suit pending <u>or presently contemplated.</u>" (Emphasis added). Further, in its pleading, Urban Air sought answers to Form-A Uniform Interrogatories and demanded plaintiff's insurance coverage.

8

Discovery ensued between Urban Air and plaintiff, who exchanged paper discovery and amended their responses to each other's interrogatories and document requests. Plaintiff and his wife were deposed on October 3, 2023.

At deposition, plaintiff explained he, his wife, their infant daughter and toddler son, I.C., and plaintiff's mother, brother, and nieces visited the Premises, but only plaintiff's son and nieces intended to participate in the Park's activities. Because "[his] son was under a certain age," plaintiff supervised him pursuant to Urban Air's policy. Plaintiff stated before purchasing tickets, he was directed to a computer, which displayed the Agreement. Plaintiff acknowledged he signed the Agreement, but testified he felt "a little bit of pressure" to do so because a line of customers was forming behind him and "you can't go in[to the Park] without it." Plaintiff further acknowledged the "waiver . . . cover[ed] both [him] and his son."

On October 24, 2023, plaintiff moved for leave to file a first amended complaint to add three corporate parties: UATP, UATP IP LLC, and UA Attractions LLC. Following Urban Air's objection, plaintiff withdrew his request to join UATP IP LLC and UA Attractions LLC.

In a December 7, 2023 order, the judge granted plaintiff's motion and extended discovery sixty days to February 5, 2024, pursuant to Rule 4:24-1(b).

9

That same day, plaintiff filed an amended complaint naming UATP as an additional defendant. Neither Urban Air nor UATP filed an answer to the amended complaint.

Discovery continued between plaintiff and Urban Air. On December 20, 2023, Urban Air served plaintiff with a supplemental notice to produce his federal income tax returns from 2019 to 2023. Within two weeks, Coppi provided his available returns to Urban Air.

We glean from the record, in January and February 2024, plaintiff underwent three independent medical examinations (IME) demanded by Urban Air, including an orthopedic evaluation, a neuropsychological evaluation, and a neurologic evaluation.[3] Urban Air thereafter reserved the right to produce at least two of the evaluators as "expert witness[es] at the time of trial."

In March 2024, in lieu of answering the amended complaint, Urban Air moved to stay the action "as to all parties pursuant to N.J.S.A. 2A:23B-7(g) and compel[] arbitration." UATP cross-moved for the same relief.

---

[3] The evaluations are not included in the record on appeal.

 A-3083-23

Thereafter, plaintiff and Urban Air attempted to schedule plaintiff's site inspection. While the motions were pending, the site inspection was scheduled for June 11, 2024.[4]

Oral argument was held on May 2, 2024, on the parties' motions. At the outset, the court noted "significant discovery," including depositions, and IMEs, was conducted during "420 plus days."

In response to the court's observation that it appeared discovery was conducted "in anticipation of trial," Urban Air's counsel explained "we were proceeding as if, I think, trial would be a goal." Urban Air's counsel further stated when plaintiff was deposed, however, Urban Air "made an effort to dedicate portions of the deposition to the concept of the waiver" and ensure "[p]laintiff understood the concept of the waiver." According to Urban Air's counsel, plaintiff's responses "support[ed] this motion, which up until that point in time, we weren't sure we had the standing to file."

Urban Air's attorney also acknowledged the Agreement's requirement that the parties "engage in efforts to obtain a settlement prior to demanding

_____

[4] We glean from the parties' briefs the site inspection was not conducted on the scheduled date. The record reflects plaintiff's engineering expert conducted a site inspection on March 13, 2022, after the incident but before plaintiff filed his lawsuit.

A-3083-23

arbitration," but explained negotiations were not fruitful. Noting both parties had the same opportunities to conduct discovery, Urban Air's attorney claimed plaintiff would not be prejudiced "if . . . discovery was not completed from both parties."

UATP's counsel presented a different argument. Noting UATP was recently added as a party and did not participate in any discovery with plaintiff, UATP's counsel argued, if the court were inclined to find Urban Air's participation in discovery waived its right to arbitration, the court nonetheless should enforce the arbitration provision as to UATP. Citing this state's "strong public policy . . . in favor of arbitration," UATP's attorney argued the court was "empowered to allow piecemeal litigation."

Plaintiff opposed the motion on two primary grounds. First addressing enforcement of the arbitration provision, plaintiff's counsel argued the Agreement did not pertain to plaintiff because it only identified plaintiff's son as "the jumper." Plaintiff's attorney further contended the arbitration provision was unclear because "[i]t doesn't explain how the rules of arbitration are different from the rules in court." Plaintiff's counsel also claimed his client was rushed to sign the Agreement. Secondly, plaintiff's counsel argued his client incurred "substantial cost" by participating in discovery thereby demonstrating

prejudice. Accordingly, he argued both defendants "waived their right to arbitrate."

Immediately following argument, the motion court issued an oral decision, granting defendants' motions. The court found plaintiff voluntarily signed the Agreement on behalf of himself and his son. The court further found the terms of the arbitration provision were clear and unambiguous. The court did not, however, determine whether either defendant waived its right to arbitration. This appeal followed.

II.

Well-established principles guide our review. Because our review of an order on a motion to compel arbitration is de novo, see Skuse, 244 N.J. at 46, we need not defer to the trial judge's interpretative analysis unless it is persuasive, Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019). Similarly, "[t]he issue of whether a party waived its arbitration right is a legal determination subject to de novo review." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 275 (2013). "Nonetheless, the factual findings underlying the waiver determination are entitled to deference and are subject to review for clear error." Ibid.

A-3083-23

A. <u>Enforceability of the Agreement and Arbitration Provision against Plaintiff</u>

"[T]he strong preference to enforce arbitration agreements, both at the state and federal level" is well established. <u>Hirsch v. Amper Fin. Servs., LLC</u>, 215 N.J. 174, 186 (2013). Indeed, "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." <u>Flanzman v. Jenny Craig, Inc.</u>, 244 N.J. 119, 133 (2020) (quoting <u>Martindale v. Sandvik, Inc.</u>, 173 N.J. 76, 92 (2002)). "Because of the favored status afforded to arbitration, '[a]n agreement to arbitrate should be read liberally in favor of arbitration.'" <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.</u>, 168 N.J. 124, 132 (2001) (alteration in original) (quoting <u>Marchak v. Claridge Commons, Inc.</u>, 134 N.J. 275, 282 (1993)). "That favored status, however, is not without limits." <u>Ibid.</u>

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." <u>Skuse</u>, 244 N.J. at 48. "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'" <u>Ibid.</u> (quoting <u>Kernahan</u>, 236 N.J. at 319). "An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." <u>Wollen v. Gulf Stream Restoration & Cleaning, LLC</u>, 468 N.J. Super. 483, 498 (App. Div. 2021) (citing <u>Hoffman v. Supplements Togo</u>

Mgmt., LLC, 419 N.J. Super. 596, 609 (App. Div. 2011)). "But a party may not claim lack of notice of the terms of an arbitration provision for failure to read it." Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 286 (2023). "[A]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself [or herself] of its burdens.'" Skuse, 244 N.J. at 54 (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)).

New Jersey has a long-standing policy protecting the right to access its courts. Article I, paragraph 9 of the New Jersey Constitution provides "[t]he right of trial by jury shall remain inviolate." N.J. Const. art. I, ¶ 9. "Although rights may be waived, courts 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "To be valid, waivers must be knowing, intelligent, and voluntary." Ibid.

Our Supreme Court in Atalese intended "to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 444 (2014) (quoting Garfinkel, 168 N.J. at 132). Accordingly, the Court has held

although "no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights," an enforceable arbitration clause "at least in some general and sufficiently broad way, must explain that the plaintiff is giving up [his or] her right to bring [his or] her claims in court or have a jury resolve the dispute." Id. at 447; see also Marchak, 134 N.J. at 282 ("The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue.").

Against these governing legal principles, we first consider plaintiff's contention that he was not a "Participant" as defined in the Agreement. To support his argument, plaintiff emphasizes the following clause of the last paragraph of the Agreement above his signature line:

> I, the Parent/Guardian, on behalf of myself and that of the minor identified above, as applicable, have read the above [Agreement] and fully understand and agree to its terms. I understand that I am giving up substantial rights, including my right to sue, by executing this Agreement. I further acknowledge that I am agreeing to indemnify UA,[5] as provided above, for all claims the referenced minor may have against UA. Lastly, I acknowledge that I am signing this Agreement freely and voluntarily, and intend my signature to constitute a complete and unconditional release of UA for all liability due to (1) ordinary negligence of UA and those parties named herein and (2) to the inherent

---

[5] This paragraph contains the only references to "UA."

16

risks of the activity, to the greatest extent permitted by the laws of the [S]tate of New Jersey.

[Emphasis added.]

Plaintiff's argument is misplaced. Even if the emphasized indemnity clause were construed as only governing the minor's claims, the preceding clause clearly relinquishes the Parent or Guardian's right to sue on his or her behalf and that of his child.

Moreover, as set forth in pertinent part above, the second paragraph of the preamble clearly states the Agreement was between Urban Air and the Adult Participant "in his/her own capacity" and on behalf of a Child Participant "if any minor(s) is/are named in the signature block below." (Emphasis added). Contrary to plaintiff's assertion otherwise, he was not required to sign a separate Agreement for his participation in the Park's activities. Rather, the emphasized clause suggests the Agreement governs Adult Participants whether or not they accompany Child Participants. Further, paragraph four, clearly states Adult Participants assume the risks on their behalf and that of Child Participants. Paragraph eight contains similar terms.

Having concluded the Agreement binds plaintiff on his own behalf and on behalf of his son, we turn to his contention that the arbitration provision fails to explain the rights he relinquished by signing the Agreement. For example,

plaintiff contends the agreement fails to explain: the differences between the rules governing arbitration and the courts; "the differences between an arbitrator and a judge or jury"; the limits on review of an arbitrator's decision; "the types of relief available in arbitration"; and the rights waived in a "meaningful" way. Plaintiff's contentions lack merit.

Based on our de novo review, we conclude, as did the motion court, the terms of the arbitration provision set forth in paragraph seven are clear and unambiguous. Indeed, the waiver of plaintiff's right to trial by jury was prominently displayed in bolded font. Further the following clause of the arbitration states, in bolded font: the limitations of "pre-arbitration discovery" compared with discovery "available in court proceedings"; "the arbitrator's award is not required to include factual findings or legal reasoning"; and the law restricts "any party's right to appeal or vacate, or seek modification of, the arbitration award." (Emphasis omitted).

Finally, we reject plaintiff's contention that he "felt pressure to sign quickly, as there was a line of other patrons waiting behind him." As the motion court correctly noted, plaintiff failed to present any evidence demonstrating he "was forced or compelled to sign the Agreement." Rather, it appears any pressure was self-imposed in view of plaintiff's deposition testimony that he felt

"a little bit of pressure" because a line of customers was forming behind him. We therefore conclude plaintiff had "reasonable notice of [the arbitration provision's] existence." Wollen, 468 N.J. Super. at 498. As such, the arbitration provision was enforceable.

## B. Waiver of Urban Air's Right to Arbitration

As a threshold matter, in his trial brief, plaintiff argued Urban Air's litigation conduct waived its right to arbitration. The court engaged in colloquy with counsel regarding waiver, but the issue was not decided. Notwithstanding our de novo standard of review, we could remand for the court to decide the issue in the first instance. See Est. of Doerfler, 454 N.J. Super. at 301-02. However, because the matter was fully developed before the trial court and briefed before this court, we exercise original jurisdiction to complete the determination of the matter on review. N.J. Const. art. VI, § 5, ¶ 3; see also Price v. Himeji, LLC, 214 N.J. 263, 295 (2013) (recognizing "determining whether to exercise original jurisdiction, an appellate court not only must weigh considerations of efficiency and the public interest that militate in favor of bringing a dispute to a conclusion, but also must evaluate whether the record is adequate to permit the court to conduct its review"). We therefore turn to the merits of plaintiff's waiver argument.

An exception to arbitration's favored status exists "when a party to a contractual arbitration provision has waived the right to compel arbitration, by its actions or inactions." Marmo & Sons Gen. Contracting, LLC v. Biagi Farms, LLC, 478 N.J. Super. 593, 602 (App. Div. 2024); see also Cole, 215 N.J. at 276. Our state has "a presumption against waiver of an arbitration agreement, which can only be overcome by clear and convincing evidence that the party" seeking to enforce the arbitration agreement "chose to seek relief in a different forum." Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008).

In Cole, our Supreme Court set forth seven non-dispositive factors for the trial court's consideration when analyzing whether a party's litigation conduct waived the right to arbitration:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of the trial; and (7) the resulting prejudice suffered by the other party, if any.
>
> [215 N.J. at 280-81.]

Assessment of the Cole factors "must focus on the totality of the circumstances," which requires "a fact-sensitive analysis." Id. at 280. "In making that assessment, courts 'concentrate on the party's litigation conduct to determine if it is consistent with its reserved right to arbitrate the dispute.'" Hopkins v. LVNV Funding LLC, 481 N.J. Super. 49, 63 (App. Div. 2024) (quoting Cole, 215 N.J. at 280).

While the present appeal was pending, we addressed the Cole factors in Hopkins, where the defendants first asserted their right to arbitration about sixteen months after the plaintiff filed his complaint. Ibid. We concluded "[t]he first factor, delay, weigh[ed] in favor of waiver." Ibid. Similarly, here, plaintiff filed his initial complaint in January 2023. Urban Air did not assert a right to arbitration until it moved to compel arbitration in March 2024, one year after it filed its answer and engaged in "significant discovery," as characterized by the court. That delay was midway between "the six-month delay we excused in Spaeth, 403 N.J. Super. at 516, and the twenty-one-month delay the Court found supported waiver in Cole, 215 N.J. at 281." See Hopkins, 481 N.J. Super. at 64. Unlike the self-represented defendant in Spaeth, however, Urban Air was "represented by counsel and, thus, 'better equipped to recognize [its] right to

arbitration and act upon it swiftly.'" See ibid. (quoting Marmo, 478 N.J. Super. at 611).

Factor two, engaging in motion practice, does not weigh in favor of waiver. Other than an October 2023 application to extend discovery, the record does not reflect Urban Air filed dispositive motions.

Factor three, litigation strategy, weighs in favor of waiver. As we stated in Hopkins, "[w]e recognize a party's litigation strategy might be difficult to discern." Ibid. However, in the present matter, during oral argument on the return date of the motion, Urban Air's counsel acknowledged discovery proceeded because trial was "a goal." Further, Urban Air's interrogatory answers specifically contemplated calling expert witnesses at trial. And, although Urban Air maintains discovery was necessary, including plaintiff's deposition to determine "his understanding of the waiver at the time he signed it," Urban Air continued to engage in discovery and did not move to compel arbitration until five months after plaintiff was deposed.

As to factor four, the extent of discovery conducted weighs in favor of waiver. Urban Air exchanged paper discovery with plaintiff, sought an extension of the discovery period, thrice conducted IMEs of plaintiff, and deposed plaintiff and his wife. Similar to the plaintiff in Marmo, 478 N.J. Super.

at 611, and the defendants in <u>Hopkins</u>, 481 N.J. Super. at 65, Urban Air "used the court system to its advantage before shifting the case to arbitration."

Factor five, "whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense," as did Urban Air here, ordinarily might weigh in favor of arbitration. <u>See</u> <u>Hopkins</u>, 481 N.J. Super at 65 (quoting <u>Cole</u>, 215 N.J. at 281). In the same pleading, however, Urban Air also "demand[ed] a trial by jury on all issues," demanded answers to interrogatories, and requested insurance coverage. Further, in Urban Air's answer, its attorney certified under <u>Rule</u> 4:5-1, arbitrations were not "pending or presently contemplated." "A court will consider an arbitration waived, however, if arbitration is simply asserted in the answer and no other measures are taken to preserve the affirmative defense." <u>Cole</u>, 215 N.J. at 281. Accordingly, we conclude the fifth factor weighs in favor of waiver.

Factor six weighs against waiver as a trial date was not yet scheduled. <u>See</u> <u>Marmo</u>, 478 N.J. Super. at 613.

As to the seventh <u>Cole</u> factor, the Court recognized, "[i]f we define prejudice as 'the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—[then prejudice] occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" 215

23

N.J. at 282 (second alteration in original) (quoting PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997)); see also Hopkins, 481 N.J. Super. at 65. We conclude, as we did in Hopkins, "[u]nder that definition of prejudice, plaintiff has been prejudiced." 481 N.J. Super. at 66; see also Marmo, 478 N.J. Super. at 604 (explaining prejudice under Cole's seventh factor must not be treated as a precondition of waiver).

Pursuant to our de novo analysis of the Cole factors, we conclude Urban Air's litigation conduct "was inconsistent with [its] purported right to arbitrate the dispute with plaintiff." See Hopkins, 481 N.J. Super. at 66.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and vacated and remanded in part for proceedings consistent with this opinion. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3083-23